MOORE, J.
I,The defendant, Ronnie Walls, was convicted of armed robbery, a violation of La. R.S. 14:64, and sentenced to 50 years at hard labor, without benefit of probation, parole, or suspension of sentence. The defendant now appeals his conviction and sentence. For the reasons that follow, we affirm.
FACTS
November 4, 2009, was Todd Asenato’s first day as a cab driver. He was dispatched to pick up a fare around 1:30 a.m. at a closed Texaco station on Hearne Avenue in west Shreveport. When Asenato arrived at the station, a black male got in the cab and directed Asenato to take him to an ATM location. The fare withdrew some cash at the ATM; then he directed Asenato down Martin Luther King Boulevard, stating that he was unsure of the address of his destination. After a prolonged drive into a rural area, the fare asked Asenato to pull over and let him out because the cost was nearing the amount of money he had on him. Mr. Asenato complied. The man handed him $40 for a $34 fare. When Asenato turned to give the fare his change, the man put a gun to Asenato’s face. He demanded Asenato’s money and told him to get out of the car. Once Asenato was out of the vehicle, the robber told Asenato to remove his pants. As Asenato tried to do so, the robber jumped into the driver’s seat of the cab and drove away with Asenato’s wallet and cell phone.
Mr. Asenato ran down the street for five or ten minutes afraid to knock at any houses in the early morning hours of the night. He eventually came upon a man and woman with a pickup truck searching for scrap metal in a garage. The couple did not have a cell phone, but they offered to drive |2Asenato to a phone. Seeing no pay phone in the area, they gave Asenato a ride to a Waffle House where he called his boss and reported the robbery. Then he called the police. When the police arrived, Asenato told them what happened. They contacted Asenato’s boss, who had already tracked the cab to its last location before the GPS unit had shut down.
At the Waffle House, Asenato described the robber to police as a black male wearing dark, baggy clothes and really scruffy in the face. He told them the robber had a gun “like something you’d see in the wild west.” Asenato testified that even though the robber had a hood on, he said he saw his face and eyes when Asenato handed him the $40. He also said that he clearly viewed the defendant when they went to the ATM machine because of the light in the car.
Officer Roy Nations responded to the call and went to the Waffle House where Asenato gave him a description of the suspect. He wrote in his report that Asenato described the suspect as a skinny black male, 5'8", 150 pounds, wearing a black shirt with some sweat pants and had a thin goatee. Asenato described the gun as a black revolver with possibly wooden hand grips. Shortly after Officer Nations transmitted this information to other officers, he received a report that the cab had been located by GPS.
Corporal Clint Cain, a Shreveport Police K-9 Officer, was driving in his police unit when he heard about the robbery. He testified that the suspect was described to him as a black male, approximately 5'7" or 5'8", approximately 180 lbs., and wearing *75 dark pants. At 8:02 a.m. he was given the | .¡location of the cab at the 3700 block of Old Blanchard Road. As Corporal Cain approached the area, he saw a black male walking along the brush line in a wooded area on the right side of. the road. The officer believed the man matched the description of the suspect. He stopped the man, who dropped his head and put his hands behind his back. Corporal Cain secured the man beside his K9 unit until backup arrived. The suspect was searched. They discovered a rusty, black revolver, cell phone, and a wad of cash in his pants. The suspect, Ronnie Walls, was arrested and charged with the crime of armed robbery.
Walls filed a motion to suppress evidence and claimed that his arrest was unconstitutional and the evidence obtained incident to that stop should be suppressed because the arresting officer did not have reasonable cause to stop the defendant and question him. The trial judge denied this motion to suppress.
A jury trial in the case began on November 15, 2010, and continued through November 18, 2010. The jury convicted Walls as charged. He now appeals, alleging that the trial court erred in denying his motion to suppress and that the evidence was insufficient to convict him of armed robbery. He also complains that the sentence imposed is excessive.
DISCUSSION
The defendant alleges that the evidence adduced at trial was not sufficient to support a conviction of armed robbery in his second assignment of error. Specifically, he contends that he was misidentified as the robber when he was stopped by Corporal Cain and subsequently identified by Mr. |4Asenato at the scene. Furthermore, he argues that the identification was tainted by its suggestive nature and the evidence shows that there were discrepancies between the description of the robber’s clothes and physique given by Mr. Asenato and his actual appearance when he was arrested.
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing the sufficiency of the evidence first is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2 Cir. 4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. |5State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App. 2 Cir. 9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
*76 Positive identification by only one witness may be sufficient to support a defendant’s conviction. State v. Adkins, 39,724 (La.App. 2 Cir. 6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607; State v. Davis, 27,961 (La.App. 2 Cir. 4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Adkins, supra; State v. Allen, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The crime of armed robbery is defined in La. R.S. 14:64, which reads as follows:
A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
The U.S. Supreme Court has approved several factors for evaluating whether the reliability of an identification may outweigh the suggestiveness |fiof the procedures employed. See Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); State v. Davis, supra. The factors are: (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness’s degree of attention, (3) the accuracy of the victim’s prior description of the criminal, (4) the level of certainty demonstrated at the confrontation, and (5) the time between the crime and the confrontation.
The defendant points to the discrepancies in the description (factor (3)) given by the victim that Officer Nations recorded in his police report compared to his actual appearance. There were variances in the description of the suspect’s facial hair and the suspect’s build. The victim described the defendant’s facial hair as scruffy, while Officer Nations said he had a goatee. As-enato said the robber was a skinny black male. Nations put out a description of a man about 150 pounds, while Corporal Cain claimed the description he received was of a man weighing 180-195 pounds. Asenato admitted at trial that the man he identified had on different clothes than those of the robber.
Defendant also contends that Asenato’s emotional state renders his identification untrustworthy under factors (4) and (5). Asenato was described as “sweating and shaking” at the Waffle House when police arrived at least 45 minutes after the crime. When he was taken to identify Walls at the scene, Asenato screamed, “That’s him, That’s him.” The defendant claims given his emotional state, it is not unreasonable to believe Mr. Asenato would have identified any black male with a goatee who was 17taken out of a police car in handcuffs as the man who had robbed him.
Finally, under factors (1) and (2), the defendant notes that, although Asenato testified he got a good look at the robber’s face at the ATM, he could not recall whether the robber had a gold tooth. Additionally, there was no reason for Asenato *77 to have a heightened level of attention before the robbery occurred.
For the foregoing reasons, the defendant argues the state failed to negate any reasonable probability of misidentification which was required for the state to meet its burden of proof. Therefore, the defendant argues, the state failed to produce evidence sufficient to prove guilt beyond a reasonable doubt.
After review, we conclude that the defendant’s argument is without merit. Asenato testified that he had several chances to view his fare’s face and noted many factors about his appearance, his clothes, and the gun the defendant brandished when he robbed him. The victim clearly recognized the defendant although the defendant apparently discarded an outer layer of clothes or changed his clothes after the robbery, but before he was caught by the police. The identification of the defendant by the victim, coupled with the police finding the victim’s cell phone on the person of the defendant during the pat-down, indicate that the state sufficiently proved that the defendant was the perpetrator of the crime.
The trier of fact obviously believed the testimony of the witnesses and not the testimony of the defendant. The victim’s testimony that he was carjacked at gunpoint, and that the defendant stole his cab, wallet, and cell | ¿phone, viewed in a light most favorable to the prosecution, was sufficient to prove beyond a reasonable doubt that the defendant had committed the crime of armed robbery. Accordingly, this assignment is without merit.
In his first assignment of error, the defendant contends that the trial court erred in denying his pretrial motion to suppress any evidence obtained as a result of the stop by Corporal Cain. He argues that Corporal Cain did not have reasonable cause to stop him based on the description Cain received over the radio and as described by the victim. The defendant points out several discrepancies, which we have discussed earlier in this opinion, concerning the defendant’s physique and clothing. He argues that because of the differences between the victim’s description and what Corporal Cain was looking for when he stopped the defendant, Corporal Cain had no reasonable cause for stopping this particular black male. Therefore, the defendant argues the trial court erred in denying his motion to suppress the evidence.
A police officer may detain an individual for investigative purposes if the officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Boyer, 2007-0476 (La.10/16/07), 967 So.2d 458. Reasonable cause for an investigatory stop is something less than probable cause, but the officer must be able to articulate knowledge of particular facts, which in conjunction with reasonable inferences drawn therefrom provide reasonable grounds to suspect the detainee of criminal activity. State v. Flowers, 441 So.2d 707 (La.1983), | 9cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). Nervousness may be one of the factors leading to a finding of reasonable cause to stop. State v. Willis, 31,561 (La.App. 2 Cir. 1/20/99), 728 So.2d 493. In the case of a pedestrian reasonably suspected of criminal activity, the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous.
The standard for investigatory stops and pat-downs for officer safety as set forth in Terry has been codified by the Louisiana legislature in La. C. Cr. P. art. 215.1.
*78 La. C. Cr. P. art. 215.1 states in pertinent part as follows:
A. A law enforcement officer may-stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
B. When a law enforcement officer has stopped a person for questioning pursuant to this Article and reasonably suspects that he is in danger, he may frisk the outer clothing of such person for a dangerous weapon. If the law enforcement officer reasonably suspects the person possesses a dangerous weapon, he may search the person.
In reviewing the trial court’s pretrial ruling on a motion to suppress, the appellate court may review the entire record, including testimony at trial. State v. Young, 39,546 (La.App. 2 Cir. 3/02/05), 895 So.2d 753, 757, citing State v. Sherman, 04-1019 (La.10/29/04), 886 So.2d 1116. Great weight is placed upon the trial court’s ruling on a motion to suppress in regard to the finding of facts because it had the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Crews, 28,153 (La.App. 2 Cir. 5/08/96), 674 So.2d 1082, 1084, citing State v. Jackson, 26,138 (La.App.10 2 Cir. 8/17/94), 641 So.2d 1081. Accordingly, this court reviews the district court’s ruling on a motion to suppress under the manifest error standard in regard to factual determinations, while applying a de novo review to its findings of law. State v. Hemphill, 41,526 (La.App. 2 Cir. 11/17/06), 942 So.2d 1263, 1271, writ denied, 2006-2976 (La.3/9/07), 949 So.2d 441.
Reviewing courts must look to the totality of the circumstances to determine whether the police officer possessed the requisite justification for such a stop. Officers must be allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. State v. Temple, 2002-1895 (La.9/09/03), 854 So.2d 856.
In this case, we conclude that the record shows that Corporal Cain articulated his reasons for suspecting that the defendant roughly fit the description of the perpetrator of the armed robbery. The defendant was walking alone in a remote area less than a half mile from the carjacked cab at 3:00 a.m. Given the short length of time between the robbery, discovery of the stolen vehicle, and detention of the appellant, coupled with his close proximity to the stolen vehicle, the remoteness of the location and the lateness of the hour, Corporal Cain had reasonable cause to believe this was the person who had perpetrated the robbery. Further, when Corporal Cain ordered the defendant to stop and approach him, the man’s body language spoke of guilt to the officer who had made many felony arrests.
InThe trial judge specifically stated that based on the totality of the circumstances from the testimony adduced, the court found Corporal Cain had particular knowledge or facts in conjunction with reasonable inference drawn from those facts that provided him with reasonable grounds to suspect the defendant of criminal activity.
The trial court’s decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. Such is not the circumstance of this case. This assignment is therefore without merit.
In his final assignment of error, the defendant alleges that the sentence of 50 years at hard labor without benefit of pro *79 bation, parole or suspension of sentence was excessive under the facts and circumstances of this case.
The defendant argues that the sentence violates his constitutional right against excessive punishment, even though it falls within the statutory limits. Also, the defendant argues the record does not indicate which, if any, factors were considered in particularizing the sentence to Mr. Walls. The record in this matter, he contends, does not provide a sufficient factual basis for the sentence imposed. The defendant complains that the trial judge merely cited a reference to considering the sentencing guidelines found in La. C. Cr. P. art. 894.1, noted that the defendant had used a dangerous weapon during the commission of the offense, that the defendant had two prior felony convictions, and stated that a lesser sentence would deprecate the seriousness of the defendant’s crime. Those were the only reasons |12articulated by the trial court for imposing the 50-year sentence. No mitigating factors were mentioned.
Finally, the defendant claims a sentence of 50 years is excessive under the facts of the case. Mr. Walls was 48 years old at the time of sentencing, and a 50-year sentence is nothing short of a life sentence for him. The defendant argues the sentence is nothing more than a needless and purposeless imposition of pain and suffering, and, therefore, is constitutionally excessive.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890, writ denied, 07-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La.App. 2 Cir. 1/28/04), 865 So.2d 284, writs denied, 2004-0834 (La.3/11/05), 896 So.2d 57 and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal | ^history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2 Cir. 4/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.6/24/05), 904 So.2d 728.
There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, a sentence violates La. Const. art. 1, § 20 if it-is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, *80 it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime; a sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. If adequate compliance with sentencing guidelines is found, the reviewing court must |14determine whether the sentence imposed is too severe in light of this particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Boudreaux, 07-0089 (La.App. 4 Cir. 8/15/07), 966 So.2d 79, writ denied, 07-1936 (La.2/1/08), 976 So.2d 717.
Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App. 2 Cir. 5/12/04), 873 So.2d 939.
The sentencing range for armed robbery is 10 to 99 years at hard labor, without benefit of probation, parole, or suspension of sentence. La. R.S. 14:64(B). The sentence actually imposed in this case was 50 years; therefore, this midrange sentence falls squarely within the parameters of the sentence provided by statute.
In this case, the trial judge noted that she had considered the sentencing guidelines in La. C. Cr. P. art. 894.1. The judge noted aggravating factors about the defendant, including that he had two prior felony convictions, noted that the robbery was committed with a dangerous weapon, and stated that a lesser sentence would deprecate the seriousness of the defendant’s crime. These findings were sufficient to show that the judge considered the sentence as it applied to this. particular defendant prior to imposing the 50 years at hard labor.
Based on these factors, the imposition of the midrange 50-year sentence is not grossly disproportionate to the severity of the crime and does [ lsnot shock the sense of justice. It is not a purposeless imposition of pain and suffering. This was an atypical armed robbery due to the defendant’s treatment of the victim that included leaving him with pants ripped to the point of indecency and leaving him stranded and helpless in a remote area. For the foregoing reasons, the trial judge did not abuse her discretion in imposing this sentence for armed robbery. Therefore, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.