GARRETT, J.
I/The defendant, Jaime Cortez,[1] was tried before a jury on two counts of attempted second degree murder and three counts of aggravated battery. On the two charges of attempted second degree murder, the jury returned responsive verdicts of attempted manslaughter on one count and aggravated battery on the other. The defendant was convicted as charged on two counts of aggravated battery; on the third *591 count of aggravated battery, the jury convicted him of the responsive verdict of simple battery. He was sentenced to serve the following concurrent sentences: 14 years at hard labor for the attempted manslaughter conviction; five years, seven years, and nine years, all at hard labor, on the three aggravated battery convictions; and five months in jail on the simple battery conviction. The defendant now appeals. We affirm the defendant’s convictions and sentences.
FACTS
On December 2, 2011, the defendant was involved in a barroom confrontation with fellow patron Bo Ballard at the J & B Lounge in West Monroe, Louisiana. The two men took their dispute outside. After punching the defendant and knocking him down, Mr. Ballard went back inside. About 15 to 20 minutes later, the defendant returned to the bar armed with a knife. As the bar owner and three patrons tried to disarm him, the defendant stabbed and/or cut them. One victim, Jack Trim, sustained a deep stab wound to his arm. Due to the laceration of an artery, Mr. Trim lost a considerable amount of blood and his wound required five staples to Lclose. Another victim, James Lowery, was rushed to the hospital with a stab wound to the abdomen. He underwent surgery and spent a couple of days in the intensive care unit. The remaining two victims, Hilton Ramsey and Burley Osborne, sustained injuries to, respectively, an arm and a knee.
The vicious melee finally ended when Mr. Ballard — who had exited the rear of the bar and reentered through the front door — came up behind the defendant and knocked him unconscious. The defendant’s friends removed him from the bar, dragging him across the bloody floor. The police later found the defendant under a trailer, unconscious and wearing only his boxer shorts and socks. His blood-stained clothes and the knife used in the attacks were never recovered.
The defendant was initially charged with four counts of attempted second degree murder and one count of aggravated assault. In an amended bill of information, he was charged with two counts of attempted second degree murder and three counts of aggravated battery. In May 2012, the defendant was tried before a jury. The two counts of attempted second degree murder resulted in a conviction for attempted manslaughter of Mr. Ballard and a conviction for aggravated battery of Mr. Lowery. As to the three counts of aggravated battery, the defendant was convicted as charged for the attacks on Mr. Trim and Mr. Ramsey. However, the jury returned a responsive verdict of simple battery as to the attack on Mr. Osborne.
The trial court sentenced the defendant to 14 years at hard labor for the attempted manslaughter conviction; nine years at hard labor for the aggravated battery of Mr. Lowery; seven years at hard labor for the |saggravated battery of Mr. Trim; five years at hard labor for the aggravated battery of Mr. Ramsey; and five months in jail for the simple battery of Mr. Osborne. It also ordered restitution of $1,000.00 to Mr. Trim and $88.50 to Mr. Lowery. The trial court ordered that the sentences be served concurrently. The defendant’s motion to reconsider his sentences was denied.
The defendant appealed.
SUFFICIENCY OF EVIDENCE
The defendant argues that the evidence was insufficient to convict him of attempted manslaughter because the state failed *592 to prove that he had the requisite specific intent to kill Mr. Ballard.[2]
Legal Principles
When issues are raised on appeal both as to. the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing the sufficiency of the evidence first is because the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Walls, 47,006 (La.App.2d Cir.2/29/12), 86 So.3d 71.
|4The Jackson standard is applicable in eases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Walls, supra.
The defendant was charged with attempted second degree murder of Mr. Ballard. The responsive verdicts for attempted second degree murder are guilty, guilty of attempted manslaughter, guilty of aggravated battery, and not guilty. La. C. Cr. P. art. 814. The jury returned a responsive verdict of attempted manslaughter.
In order to convict a defendant of attempted second degree murder, the state must prove beyond a reasonable doubt that the defendant had the specific intent to kill. State v. Bishop, 2001-2548 (La.1/14/03), 835 So.2d 434; State v. Logan, 45,136 (La.App.2d Cir.4/14/10), 34 So.3d 528, unit denied, 2010-1099 (La.11/5/10), 50 So.3d 812. Proof of specific intent to inflict great bodily harm is insufficient. State v. Logan, supra.
The offense of manslaughter is defined as a homicide that would be first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. |b14:31. Although specific intent to kill is not necessary for a conviction of manslaughter, a specific intent to kill is required for a conviction of attempted manslaughter. State v. Logan, supra. To support a conviction for attempted manslaughter, the state must prove that the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. State v. Glover, 47,311 (La.App.2d Cir.10/10/12), 106 So.3d 129.
Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *593 State v. Glover, supra. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Logan, supra; State v. Reed, 45,237 (La.App.2d Cir.5/26/10), 37 So.3d 1116.
Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A). Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended. La. R.S. 14:27(B)(1).
The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of this determination is to | fibe guided by the standards of Jackson v. Virginia, supra. State v. Linnear, 44,830 (La.App.2d Cir.12/9/09), 26 So.3d 303; State v. Glover, supra.
Discussion
Mr. Ballard, the object of the defendant’s ire, did not testify at trial.[3] However, Mr. Trim, one of the defendant’s stabbing victims, testified that he observed the physical altercation that occurred between the defendant and Mr. Ballard outside the bar. Mr. Ballard felled the defendant with a punch. Immediately after getting up off the ground, the defendant told Mr. Ballard twice, ‘You wait right here. I’ll be right back.” The defendant then walked away rapidly. Mr. Trim testified that, as a result of this statement, he became nervous and had “a feeling something was going to go down.” Approximately 15 to 20 minutes later, the defendant returned with a knife that had a blade which was at least five inches long.
The state presented the testimony of several witnesses to the defendant’s ensuing bloody rampage at the J & B Lounge. Many of these witnesses testified that the defendant was looking for Mr. Ballard as he relentlessly fought his way through the men who tried to stop and disarm him. The bar’s surveillance video corroborated their testimony. The defendant can be seen opening the front door of the bar with his left hand while holding the knife behind him in his right hand. He then strode into the bar at a brisk pace and with great energy and obvious determination. It was readily apparent from his movements that he was looking about the bar for someone during the free-for-all that followed. While the actual incident |7lasted less than a minute, the surveillance video captured a chaotic scene of mayhem and intense violence. Instead of retreating and fleeing after he encountered substantial resistance in his path toward Mr. Ballard, the defendant continued to fight with and stab at the men thwarting his efforts to get within striking distance of Mr. Ballard. At one point, Mr. Osborne attempted to subdue the defendant by administering a choke hold and taking him down to his knees. However, the defendant — who was described by Mr. Osborne as “strong as a mule” — was able to recover swiftly and resume his battle with the men trying to disarm him. He continued to charge and slash at these men until Mr. Ballard came up behind him and rendered him unconscious with a single blow.
*594 Some witnesses to the brawl offered different perceptions as to what they thought the defendant’s intent was toward Mr. Ballard. Mr. Lowery—the most seriously injured victim and a person who was at close quarters with the defendant during the fracas—testified that it was apparent that the defendant intended to kill Mr. Ballard.
The defendant argues that the state failed to prove that he had specific intent to kill Mr. Ballard because he did not articulate his intentions or actually harm Mr. Ballard in any fashion. However, the evidence presented at trial portrayed the defendant as an enraged and determined man on a mission to kill Mr. Ballard in retaliation for humiliating him in their earlier physical altercation. The overwhelming consensus among the witnesses was that the defendant’s real target was Mr. Ballard. The defendant’s determination to force his way through to Mr. Ballard was so great that he |sinflicted serious injuries on two of the men who valiantly tried to disarm him. Not only did the defendant stab Mr. Lowery in the abdomen, but he also cut him in the chest. Fortunately, Mr. Lowery’s chest wound was only superficial; however, his abdominal wound was a serious injury requiring surgery. The crime scene photos show a considerable amount of blood on the bar floor; the testimony indicated that most of the blood was from the arterial arm wound sustained by Mr. Trim. While the defendant’s actions against his other victims constituted crimes in and of themselves, the sheer ferocity of his conduct against the people in his path is also highly indicative of the deadly intent he harbored toward Mr. Ballard, the actual object of his aggression.
After considering the evidence presented at trial in the light most favorable to the prosecution, we find that the jury could have reasonably concluded that the state proved that the defendant had the specific intent to kill Mr. Ballard and that he committed an overt act in furtherance of that goal, thereby supporting his conviction for attempted manslaughter.
This assignment of error is meritless.
INEFFECTIVE ASSISTANCE OF COUNSEL
The defendant also contends that his trial counsel was ineffective in several respects and that his fundamental right to a fair trial was violated by these errors.
The test for effectiveness of counsel is two-pronged. First, a defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment to the U.S. 19Constitution. Second, he must show that the deficient performance prejudiced the defense by establishing that counsel’s errors were so' serious as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Error in Bill of Information
The defendant argues that the amended bill of information, which was read to the jury,[4] erroneously charged that the defendant did “attempt to commit second degree murder ... when the offender has a specific intent to kill or inflict great bodily harm.” He further asserts that his trial counsel was ineffective because he failed to object to this error.
The inclusion of the phrase “inflict great bodily harm” was error because—as discussed supra—attempted second de *595 gree murder requires that the perpetrator have the specific intent to kill. However, the purpose of a bill of information is to fairly inform the defendant of the charges against him while a charge to a jury is an instruction to the jury on exactly how to apply the law. La. C. Cr. P. arts. 464 and 802; State v. Simon, 617 So.2d 153 (La.App. 3d Cir.1993).
In State v. Simon, supra, the defendant was charged with attempted second degree murder. In describing the charge of attempted second degree murder, the bill of information included the phrase “or to inflict great bodily harm.” The third circuit found that, although courts have held that it is reversible error to include those words in a jury charge when defining | mattempted second degree murder, such a statement in a bill of information was not error. See also State v. Cavazos, 610 So.2d 127 (La.1992), wherein the supreme court held a post-verdict attack on the sufficiency of an indictment does not provide grounds for setting aside a conviction unless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. The facts in Cavazos are similar to those in the instant case — in both cases, the bill of information read to the jury erroneously included the “inflict great bodily harm” language as to a charge of attempted second degree murder and the jury instructions included a definition of second degree murder in its general charge. However, the trial judge in Cavazos — like the trial judge in the instant case — explicitly instructed jurors that a conviction for attempted second degree murder required a finding that the defendant had the specific intent to kill the victim.[5] Although the trial court granted relief to Cavazos pursuant to a post-conviction relief application, the supreme court reversed the trial court decision and reinstated his conviction.
In the instant case, the amended bill of information is not fatally defective in that it did, in fact, fairly inform the defendant of the charges of which he was accused. Furthermore, we note that during the trial, the jury was told repeatedly— during voir dire, opening statements, closing arguments and, most importantly, jury instructions — that the charge of [^attempted second degree murder required a finding that the defendant had the specific intent to kill. Additionally, in the charge to the jury, the jurors were properly instructed that the bill of information was a mere charge against the defendant, that it was not evidence of his guilt, and that they should not be influenced by it in considering the case.
Based upon our review of the record, it is abundantly clear that the jury fully understood that the state had to prove beyond a reasonable doubt that the defendant had the specific intent to kill two of the victims, Mr. Ballard and Mr. Lowery. The jury applied the law to the different charges and the five victims, and, after carefully sorting through the evidence, the jurors found it appropriate to return responsive verdicts on three of the charges. As the defendant obviously suffered no prejudice due to the wording of the amended bill of information, we cannot find that trial counsel was ineffective.
This assignment of error is without merit.
Jury Instruction
The defendant claims that the instructions read to the jury failed to include a definition of attempted manslaughter and *596 that his counsel was ineffective because he failed to secure the inclusion of this definition or object to its exclusion. However, review of the actual transcript of the trial court’s charge to the jury — which was supplemented into the appellate record by order of this court — reveals that such an instruction was, in fact, l^given. Consequently, the defendant has no basis for alleging ineffectiveness on the part of his trial counsel in this regard.
This assignment of error lacks merit.
CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.

. Although the defendant was originally charged as "Francisco Jamie Cortez,” immediately prior to trial, the state corrected the amended bill of information to reflect that the defendant's name is actually "Jaime Cortez.”

. The defendant makes no complaints as to his three convictions of aggravated battery and one conviction of simple battery.

. The record indicates that he was out of state due to a death in his family.

. We note that the transcript did not contain the verbatim reading of the bill of information; the transcript merely recited: "Clerk reads second amended bill of information to the jury.”

. In Cavazos, supra, both the prosecutor and defense counsel erroneously referred to the specific intent to inflict great bodily harm in their opening statements. In the instant case, no such mistake occurred.