Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,118-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

ELLIOT CORNELIUS JACKSON                              Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 16F3051

Honorable Marcus L. Hunter, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad Ikerd

ROBERT STEPHEN TEW                   Counsel for Appellee
District Attorney

CARL DOUGLAS WALKER
MARK KEITH WHITE
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and ROBINSON, JJ.

**THOMPSON, J.**

Elliot Cornelius Jackson appeals his conviction by a Ouachita Parish jury of attempted manslaughter. He was also convicted of attempted armed robbery and felon in possession of a firearm, but he has not appealed those convictions. The trial court originally sentenced him to concurrent sentences of 30 years on the attempted robbery and 15 years on the attempted manslaughter, with a consecutive sentence of 15 years on the felon in possession of a firearm charge. In response to a motion to reconsider the sentence, the trial court maintained the length of each sentence but amended them all to run concurrently. The defendant now appeals only his conviction for attempted manslaughter, arguing that the State failed to sufficiently prove that he had the intent necessary for an attempted manslaughter conviction. For the following reasons, we affirm the defendant's conviction.

## FACTS

On November 18, 2016, Dustin Haynes ("Haynes") was at work at College Town Import, changing out the cables in his vehicle, when he heard the sound of someone putting a round in a chamber of a weapon or "racking a slide," as he described it. Haynes was familiar with that recognizable sound from growing up around weapons and from his military experience in the Louisiana National Guard. Haynes instinctively raised his head to locate the source of the concerning sound and saw a man, later identified as the defendant, Elliot Cornelius Jackson ("Jackson"), pointing a pistol at his face. Jackson fired the weapon just a few feet from Haynes and in a direct line at his head. The bullet hit the "B-pillar" of the vehicle, barely missing Haynes, and ricocheted off the windshield. Haynes testified that it was sheer luck that the bullet did not hit him, as he instinctively flinched. Jackson

moved to get another shot at Haynes while Haynes was still in the vehicle. Haynes testified he was caught off guard and thought that the shot may have been a blank. He testified that he thought Jackson may have been trying to scare him. However, Haynes also testified that when Jackson continued to put the gun in his face, he believed Jackson was attempting to line up another shot.

Haynes decided for his own safety that he needed to take the weapon away from Jackson, so he grabbed the pistol, pushed them both out of the vehicle, and then disarmed Jackson. The two men continued to fight for several minutes. Haynes was able to gain control of the pistol, remove the magazine, and eject the active round from its chamber. Much to the surprise and disappointment of Jackson, Haynes had training in close quarters combat in the Louisiana National Guard, and he used those skills to save his own life and subdue Jackson. Haynes wrestled Jackson from the vehicle, across the garage, and, after several minutes, into his office, where Haynes called the police while restraining Jackson. Haynes testified that Jackson fought him and attempted to get the pistol back the entire time. Significant portions of the altercation were recorded by the business's surveillance camera. Haynes's testimony is supported by the video surveillance, and that Jackson wore a latex glove on the hand he was using to hold the pistol.

When the police arrived, they relieved Haynes and took control of Jackson, placed him under arrest, and read him his Miranda rights. Jackson waived his right to remain silent and confessed that he went to the garage to rob Haynes. He also admitted that he was not permitted to possess weapons because of a prior felony drug conviction. At the time of the arrest, the police discovered a mask hidden in Jackson's pants.

2

On January 18, 2017, Jackson was charged with a four-count bill of information, charging him with: (1) attempted armed robbery, (2) attempted second degree murder, (3) possession of a firearm by a felon, and (4) illegal possession of a stolen firearm. The illegal possession of a stolen firearm charge was dropped in an amended bill of information on June 17, 2019. After trial by jury on June 19, 2019, Jackson was found guilty of attempted armed robbery, attempted manslaughter, and possession of a firearm by a felon. He was sentenced to serve 30 years for the attempted armed robbery, 15 years for the attempted manslaughter, and 15 years and a fine of $1,500 for the possession of a firearm charge, all without the benefit of probation, parole, or suspension of sentence. The attempted armed robbery and attempted manslaughter sentences were ordered to be run concurrently with each other but consecutively with the sentence for the possession of a firearm by a felon charge. The trial court also ordered Jackson to pay restitution to Haynes in the amount of $1,665 for the damage to the vehicle.

On December 9, 2019, Jackson filed a motion to reconsider sentence, and a hearing was held on the motion. The trial court granted the motion and maintained the length of each sentence, but amended them all to run concurrently. Jackson now appeals, arguing that the State failed to sufficiently prove that he was guilty of attempted manslaughter.

## DISCUSSION

**Assignment of Error:** **The state failed to sufficiently prove that Elliot Jackson was guilty of attempted manslaughter.**

Jackson argues that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he intended to kill Haynes when he shot at him and then attempted to fire another round at him, and as such, the

state failed to prove an essential element of the attempted manslaughter charge. The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004), *State v. Holder*, 50,171 (La. App. 2 Cir. 12/9/15), 181 So. 3d 918, 929, *writ denied*, 16-0092 (La. 12/16/16), 211 So. 3d 1166. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224, *writ denied*, 17-2174 (La. 10/8/18), 253 So. 3d 797.

The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528, *writ denied*, 15-2291 (La. 4/4/16), 190 So. 3d 1203. A reviewing court affords great deference to a trial court's decision to accept or reject the testimony of a witness in whole or in part. *State v. Steines*, *supra*. Thus, this court is charged with examining the evidence in the light most favorable to the prosecution and determining whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*

The offense of manslaughter is defined as a homicide that would be first- or second-degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to

4

deprive an average person of his self-control and cool reflection. La. R.S. 14:31(A)(1). Although a specific intent to kill is not required for a conviction of manslaughter, it is necessary to sustain a conviction for attempted manslaughter. *State v. Cortez*, 48,319 (La. App. 2 Cir. 8/7/13), 122 So. 3d 588. To support a conviction for attempted manslaughter, the state must prove that the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 12-2667 (La. 5/24/13), 116 So. 3d 659.

Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *State v. Glover*, *supra*. Such state of mind can be formed in an instant. *State v. Minor*, 52,091 (La. App. 2 Cir. 9/26/18), 254 So. 3d 1278; *State v. Murray*, 49,418 (La. App. 2 Cir. 1/14/15), 161 So. 3d 918, *writ denied*, 15-0379 (La. 4/8/16), 191 So. 3d 582.

Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries, and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119. The Louisiana Supreme Court has held on more than one occasion that specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368, *cert. denied*,

5

520 U.S. 1199, 117 S. Ct. 1558, 137 L. Ed. 2d 705 (1997). The determination of whether the requisite intent is present is a question for the trier of fact. *State v. Lewis*, 46,513 (La. App. 2 Cir. 9/28/11), 74 So. 3d 254, *writ denied*, 11-2317 (La. 4/9/12), 84 So. 3d 551.

In this case, Jackson argues that the evidence presented does not prove that he intended to kill Haynes. Jackson notes that Haynes testified that he believed Jackson's first shot was intended to scare him. Jackson contends that he had the opportunity to shoot Haynes before Haynes disarmed him, and the fact that he did not take the shot is evidence that he lacked the intent to kill Haynes. In support of this argument, Jackson notes that there is evidence in the record that he "panicked" when he took the shot at Haynes. Jackson further argues that if he had wanted to sneak up on Haynes to kill him, he would not have racked the slide inside the garage, alerting Haynes to his presence.

We find these arguments unpersuasive. Jackson's specific intent to kill can be determined by the circumstances of the situation and his actions. In direct conflict with Jackson's self-serving testimony at trial and his arguments to this court is the video surveillance of the incident. The two photos below depict the location the bullet, fired from a pistol and directly aimed at Haynes's head, impacted the vehicle.





*Enlargement of a portion of State Exhibit 3a*

*Enlargement of a portion of State Exhibit 3b (emphasis added)*

A review of the record reflects that Jackson entered Haynes's garage with a deadly weapon, which he then fired at Haynes. Haynes testified that he believed that if the bullet had not ricocheted, the shot would have hit him directly in the head. Although Jackson did not shoot again, it was not due to a decision by Jackson. Haynes testified that Jackson was lining up to take another shot, and he was able to disarm him. Any testimony from Jackson regarding the shot at Haynes or his subsequent actions is completely contradicted by the video surveillance of this incident. State Exhibit 3c clearly depicts Jackson attempting to point the gun at Haynes after his first shot missed.



*Enlarged Portion of State Exhibit 3c*

Testimony indicates that Jackson fought to get the gun back the entire time he and Haynes struggled. Haynes testified that Jackson wore a latex glove on his firing hand. The entire conflict was captured on surveillance video and played for the jury. The events depicted on the video surveillance described by

Haynes clearly established Jackson intended to kill Haynes and continued for several minutes to act on that intent.

Considering these facts in a light most favorable to the prosecution, any rational trier of fact could conclude that Jackson had specific intent to kill Haynes. As such, the elements for conviction of attempted manslaughter are satisfied, and this assignment of error lacks merit.

## ERRORS PATENT

A review of the record indicates that there is a discrepancy between the minutes and the transcript of the sentencing hearing held on November 14, 2019. La. C. Cr. P. art. 871(A) provides that a "[s]entence shall be pronounced orally in open court and recorded in the minutes of the court." When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Burns*, 53,250 (La. App. 2 Cir. 1/15/20), 290 So. 3d 721; *State v. Lynch*, 441 So. 2d 732 (La. 1983).

The transcript indicates that the sentences imposed for attempted armed robbery,[1] attempted manslaughter,[2] and possession of a firearm by a felon[3] failed to state that they were imposed with hard labor. A defendant in

---

[1] La. R.S. 14:27 states, in pertinent part: "D. Whoever attempts to commit any crime shall be punished as follows: (3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Further, La. R.S. 14:64(B) provides: "Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence."

[2] La. R.S. 14:27 states, in pertinent part: "D. Whoever attempts to commit any crime shall be punished as follows: (3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both." Further, La. R.S. 14:31(B) provides: "Whoever commits manslaughter shall be imprisoned at hard labor for not more than forty years."

[3] La. R.S. 14:95.1(B) provides, in pertinent part: "Whoever is found guilty of violating the provisions of this Section shall be imprisoned at hard labor for not less than

8

a criminal case does not have a constitutional right or a statutory right to an illegally lenient sentence. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So. 2d 790. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). This correction may be made despite the failure of either party to raise the issue. *State v. Williams*, *supra*; *State v. Leday*, 05-1641 (La. App. 3 Cir. 5/3/06), 930 So. 2d 286.

The failure to impose hard labor is harmless and self-correcting when there is a mandatory felony requiring any sentence to be served at hard labor. *State v. Burns*, *supra*; *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20) 292 So. 3d 61; *State v. Foster*, 50,535 (La. App. 2 Cir. 4/13/16), 194 So. 3d 674. Because La. R.S. 14:27, 14:64, 14:31, and 14:95.1 are mandatory felonies requiring any sentence to be served at hard labor, the error is harmless and self-correcting.

Further, an examination of the transcript and minutes indicates that the trial court erred in sentencing Jackson with regard to his conviction for attempted manslaughter, as the record reflects that Jackson was sentenced to 15 years without the benefit of probation, parole, or suspension of sentence. Although this sentence is within the range prescribed by La. R.S. 14:31 and 14:27, those statutes do not reflect that a defendant may be sentenced to attempted manslaughter with a restriction of benefits. Accordingly, under La. C. Cr. P. art. 882, we amend Jackson's attempted manslaughter sentence

---

five nor more than twenty years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand dollars nor more than five thousand dollars."

to remove the restriction on benefits. We remand with instruction to the trial court to make an entry in the minutes reflecting this change.

Our review of the transcript reveals that Jackson was not given credit for time served. Failure to give credit for time served, which is mandated by La. C. Cr. P. art. 880, is error patent and may be corrected by an appellate court under La. C. Cr. P. art. 882 without remanding for resentencing. *State v. Samuels*, 37,099 (La. App. 2 Cir. 5/14/03), 847 So. 2d 93. Accordingly, we amend Jackson's sentence without remanding for resentencing to allow him credit for time served.

Finally, the record indicates the trial court failed to advise Jackson of his right to appeal or of the time limitations for post-conviction relief. La. C. Cr. P. art. 930.8(C) provides that at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. Accordingly, we advise Jackson that no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of convictions and sentences have become final under the provisions of La. C. Cr. P. arts. 914 or 922.

### CONCLUSION

For the foregoing reasons, we affirm Jackson's conviction for attempted manslaughter. This matter is further remanded to the trial court to correct the minutes. Jackson's sentences are amended to reflect credit for time served. Jackson's attempted manslaughter sentence is amended to delete the denial of benefits eligibility and remanded with instructions to the trial court to make an entry in the minutes reflecting this change. In all other respects, Jackson's sentences are affirmed. Finally, the defendant is notified

that he has two years to file for post-conviction relief, commencing from the finality of this conviction and sentence.

**CONVICTION AFFIRMED; SENTENCES AFFIRMED, AS AMENDED; REMANDED WITH INSTRUCTIONS.**