LOLLEY, J.
h Following a jury trial, the defendant, Ladarrian Jatazz Jones, was convicted of three counts of attempted second degree murder, violations of La. R.S. 14:30.1 and 14:27. Jones was subsequently sentenced to 20 years at hard labor, without the benefit of parole, probation, or suspension of sentence on each count, to be served concurrently. Jones now appeals, and for the following reasons, we affirm his convictions and sentences.
Facts
As the result of a drug deal gone bad on April 8, 2011, Ladarrian Jatazz Jones was charged by bill of information with three separate counts of attempted second degree murder against Zachary Humble, Drew Mayo and Randall “Ryan” Linder. The bill of information also charged Jones with three separate counts of armed robbery against three individuals arising out of a previous incident.
Following a trial on all six charges, the jury found Jones guilty of the three counts of attempted second degree murder and not guilty of the three counts of armed robbery with a firearm. The jury rendered its verdicts on all counts by a vote of ten to two.
Subsequently, a sentencing hearing was held. The trial court considered the facts of this case, the presentence investigation report, the letters submitted on behalf of Jones and the victims, and the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. The trial court considered certain aggravating and mitigating factors and sentenced Jones to 20 years at hard labor, without the benefit of parole, probation, or suspension of sentence, on each count, to be served concurrently.
li>On December 9, 2013, Jones filed a motion for an out-of-time appeal, which the trial court granted. This appeal followed.
Discussion

Sufficiency of the Evidence

On appeal, Jones contends that the evidence was insufficient to support his convictions for attempted second degree murder, arguing the following: the state failed to prove that Jones was not acting in defense of his brother when he stabbed Humble, or that Jones had the specific intent to kill Humble, Linder, or Mayo; Jones did not have a gun, nor did he fire a gun; Jones did not start the fight over the marijuana and only entered the melee by stabbing his victim in a struggle over a gun; and, that in stabbing his victim, Jones was protecting his brother from getting severely injured or killed. Jones contends that even if the self-defense evidence is rejected, the evidence supports only a verdict of aggravated battery under La. R.S. 14:34.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181, unit denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to ^substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/06/09), 21 So.3d 297. The appellate court does not assess *238 the credibility of witnesses or reweigh evidence. State v. Smith, 1994-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Cook, 48,355 (La.App.2d Cir.11/20/13), 127 So.3d 992, writ denied, 2013-3000 (La.05/30/14), 140 So.3d 1174.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/06/09), 21 So.3d 299.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App. 2d Cir.09/18/02), 828 So.2d 622, units denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
Second degree murder is the killing of a human being when, among other things, the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose. La. R.S. 14:27(A).
To obtain a conviction for attempted second degree murder the state must prove the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim’s death. State v. Bishop, 2001-2548 (La.01/14/03), 835 So.2d 434. Attempted second degree murder requires proof of specific intent to kill; proof of specific intent to inflict great bodily harm is insufficient. Id.
Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Reed, 45,237 (La.App.2d Cir.05/26/10), 37 So.3d 1116. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Hill, 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758, unit denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Louisiana R.S. 14:24 provides that “all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” Not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different. State v. Mitchell, 1999-3342 (La.10/17/00), 772 So.2d 78. An individual *239 may only be convicted as a principal for those crimes which he personally has the requisite mental state. The intent of the accomplice cannot be inferred to the accused. Id. Further, more than mere presence and subsequent flight from the scene is required to be found guilty as a principal in murder cases requiring specific intent. State v. Wright, 2001-0322 (La.12/04/02), 834 So.2d 974.
The use of force or violence upon the person of another is justifiable under La. R.S. 14:19 when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person’s lawful possession, provided that the force or violence must be reasonable and apparently necessary to prevent such offense. La. R.S. 14:22 provides that it is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is treasonably believed that such intervention is necessary to protect the other person.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,423 (La.App.2d Cir.6/23/04), 877 So.2d 216, writ denied, 2004-1866 (La.11/24/04), 888 So.2d 229. The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Ford, 42,928 (La.App.2d Cir.02/13/08), 976 So.2d 321, writ denied, 2008-0606 (La.10/03/08), 992 So.2d 1010.
At the trial of the matter, the jury heard testimony that on April 8, 2011, Zachary Humble and Ryan Linder made arrangements to buy a quarter-pound of marijuana from people they did not know. They arranged for the transaction to occur at Drew Mayo’s mobile home in Aurora Trailer Park in Monroe, Louisiana. However, Humble and Linder only asked Mayo if they could meet up with some people at his house, and they did not tell Mayo anything about the marijuana transaction. On the way to Mayo’s trailer, Linder told Humble that they were not going to pay for the marijuana, but were just going to take it from the sellers. Humble and Linder were not armed with any weapons. They went inside the trailer and |7visited with Mayo for about 10 minutes, and then went outside to meet the people who were going to sell them the marijuana. A car drove up to Mayo’s trailer and two men, whom they later identified as Jones and his half-brother, Jameel Chatman, got out of the ear. The men began discussing the transaction, and Linder put the marijuana in his bag and told Jones and Chatman that they needed to leave. Humble and Linder then ran inside Mayo’s trailer with the marijuana and closed the door. Seconds later, Jones and Chatman came in the trailer and a fight ensued.
Humble testified that they were fighting over the marijuana and then Chatman pulled out a gun and demanded the marijuana and the money. When he saw the gun in Chatman’s hand, he lunged for the gun in an attempt to disarm Chatman. As Humble was trying to get the gun from Chatman, the defendant stabbed Humble in the back. Humble testified that when Jones pulled the knife out of his back, he lost all the air in his lungs and fell to the ground. He stated that Jones then got on *240 top of him and began stabbing him in the face. While Jones was stabbing him, he heard several gunshots.
Linder testified that after Chatman pulled out the gun, Chatman and Humble struggled over it. He stated that he saw Jones, who was armed with a four-to-five-inch knife, jump on Humble’s back and stab him as hard as he could right before Chatman shot Linder in the chest. After he was shot, Linder sat down on the couch and heard several more gunshots before he saw Chatman fall down in front of him.
| RMayo testified that he was sitting on the couch watching TV when Humble and Linder came into his trailer, followed by Jones and Chatman, and the scuffle ensued. He stated that he kept a pistol under the coffee table, which was right in front of the couch. According to Mayo, Chatman pulled out his gun and ordered them to get on the ground. When he saw Chatman point the gun at Linder, Mayo jumped up and grabbed his gun. Mayo stated that as he was doing so, he heard a gunshot and saw that Chatman had shot Linder in the chest. Mayo then shot at Chatman, striking him in the elbow, and Chatman shot his gun toward Mayo. As Mayo saw Jones pulling the knife out of Humble’s back, Chatman shot again toward Mayo, who shot again and ran out of his trailer to a friend’s trailer nearby.
Sergeant Mark Johnson, of the Monroe Police Department, testified that he was called to St. Francis Medical Center where Humble, Linder and Chatman had all arrived and were being treated for their injuries. Sergeant Johnson went to the scene at Aurora Trailer Park and interviewed Mayo. When Chatman was released from the hospital shortly thereafter, he was taken to the police department. Sergeant Johnson stated that Chatman gave a statement in which he admitted to his involvement in the incident at the trailer, but stated that Mayo pulled out his gun first, and he also indicated that Jones was with him. Jones was not located at that time, but several days later, Jones arrived at the police station with his mother and turned himself in. Sergeant Johnson took a recorded statement from Jones, which was played for the jury at trial.
|9In his recorded statement to Sgt. Johnson, Jones denied having any knowledge about what Chatman was doing at the trailer. He stated that when they got in the trailer, Chatman pulled out a gun and told the three men to give him everything, the marijuana and the money. He stated that Humble and Chatman began fighting and he saw Mayo with a gun and heard gunshots, so he got on the ground in the corner and did not get up until the three other men left the trailer. Jones denied having a knife and claimed that he did not stab anyone or even know that anyone got stabbed.
Here, the evidence presented at trial is sufficient to support Jones’s convictions for attempted second degree murder. At trial, the testimony established that after Humble’s and Linder’s foolish attempt to steal the marijuana from their dealers, Jones and Chatman busted into Mayo’s trailer behind them. Chatman pulled out a gun and demanded the money and marijuana. When Humble attempted to disarm Chatman, Jones stabbed Humble in the back, puncturing his lung. Jones then got on top of Humble and repeatedly stabbed him in the face while Chatman shot Linder in the center of the chest and fired shots at Mayo. Other than Jones’s self-serving statement to police to the contrary, the evidence at trial clearly supports this version of events. Moreover, the location, number, and severity of Humble’s wounds demonstrate Jones’s specific intent to kill Humble. Further, although Jones did not actually shoot or fire a gun at *241 Linder or Mayo, the evidence establishes that Jones was a principal to these crimes by aiding and abetting Chatman. Jones and Chatman were acting in concert, and Jones’s actions in stabbing Humble facilitated the shooting. Based on | inhis active participation in the commission of this offense, there was arguably sufficient evidence for the jury to find that Jones had the specific intent to kill not only his immediate victim Humble, but Linder and Mayo as well.
In addition, the jury reasonably concluded that Jones’s actions in stabbing Humble were not justified as being in defense of Chatman. Although Jones stabbed Humble only after Humble struggled with Chat-man over the gun, there is no evidence that the force and violence used by Jones was reasonable or apparently necessary. As noted by the trial court at sentencing, when Jones stabbed Humble in the back, Humble fell to the ground and ceased being a threat, but Jones continued to attack him by repeatedly slashing and stabbing him in the face. Further, because Chat-man and Jones were the aggressors in this situation, Jones is not entitled to claim self-defense or defense of Chatman.
Considering the evidence in the light most favorable to the prosecution, a rational trier of fact could have reasonably concluded that Jones had the requisite specific intent to kill, and that he did not act in self-defense or defense of others. The evidence presented at trial was sufficient to support the convictions for attempted second degree murder. Therefore, this assignment of error is without merit.

Bill of Information

Jones also brings three pro se assignments of error, the first two being related to the bill of information. He argues that the bill of information was fatally defective because it did not contain the formal conclusion provided h fin La. C. Cr. P. art. 468, i.e. the language “contrary to the law of the State of Louisiana and against the peace and dignity of the same.”
Louisiana C. Cr. P. art. 468 provides:
The information may be in substantially the following form:
In the (Here state the name of the court.) on the_day of_, 19_State of Louisiana v. A.B. (Here state the name or description of the accused.).
X.Y., District Attorney for the Parish of _, charges that A.B. (Here state the name or description of the accused.) committed the offense of _, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the state of Louisiana and against the peace and dignity of the same.
The permissive nature of the language of La. C. Cr. P. art. 463 does not require inclusion of the formal conclusion “contrary to the law of the state of Louisiana and against the peace and dignity of the same.” State v. Estes, 42,093 (La.App.2d Cir.05/09/07), 956 So.2d 779, writ denied, 2007-1442 (La.04/04/08), 978 So.2d 324. The omission of the formal conclusion is a formal defect, which is waived if no motion to quash is timely filed. State v. Russell, 397 So.2d 1319 (La.1981); La. C. Cr. P. art. 531, et seq. Further, if timely raised, formal defects may be cured by amendment at any time. La. C. Cr. P. art. 487; see also State v. Davis, 614 So.2d 270 (La.App. 3d Cir.1993).
The fact that the bill of information does not contain the formal conclusion as provided in La. C. Cr. P. art. 463 does not render the bill fatally defective, nor did it deprive the trial court of jurisdiction. The *242 112inclusion of the exact language of the form provided in that article is not required. Further, the omission of the concluding phrase is only a formal defect, which could have been cured by amendment, but was waived by Jones’s failure to file a motion to quash. These assignments of error are without merit.

Ineffective Trial Counsel

In the third pro se assignment of error, Jones contends that his attorney was ineffective in failing to file a motion to quash the defective bill of information, which he claims would have resulted in the dismissal of the prosecution against him. We disagree.
Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 980. However, when the record is sufficient, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. State v. Eiskina, 42,492 (La.App.2d Cir.09/19/07), 965 So.2d 1010.
A cláim of ineffective assistance of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant | ismust show that counsel’s deficient performance prejudiced his defense. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland v. Washington, supra; State v. Jordan, 35,643 (La.App.2d Cir.04/03/02), 813 So.2d 1123, writ denied, 2002-1570 (La.05/30/03), 845 So.2d 1067.
The filing and pursuit of pretrial motions is squarely within the ambit of the attorney’s trial strategy, and counsel is not required to engage in efforts of futility. State v. Shed, 36,321 (La.App.2d Cir.09/18/02), 828 So.2d 124, writ denied, 2002-3123 (La.12/19/03), 861 So.2d 561.
Here, regarding his ineffective assistance of counsel claim, Jones has failed to show any prejudice arising from his trial attorney’s failure to file a motion to quash the bill of information. If his attorney would have timely raised this issue, the bill would have simply been amended. Accordingly, this pro se assignment of error is without merit.,
ConClusion
For the foregoing reasons, the convictions and sentences of Ladarrian Jatazz Jones are affirmed.
AFFIRMED.