PITMAN, J.
|,A nonunanimous jury convicted Defendant Andrew Levell Smith of second degree murder, and he was sentenced to life in prison without parole. Defendant appeals his conviction and sentence. For the reasons stated herein, we affirm Defendant’s conviction and sentence.

FACTS

Defendant was charged with second degree murder, in violation of La. R.S. 14:30.1, in the shooting death of Prentiss Tyre Britton, which occurred on the night of May 7, 2013, at the Peach Street Apartments, a.k.a. Cooper Road Plaza Apartments, in Shreveport, Louisiana. A jury trial was held in June 2014 and the following evidence was adduced.
Corporal Kevin Duck of the Shreveport Police Department (“SPD”) testified that, on May 7, 2013, at approximately 9:45 p.m., he responded to a call regarding a shooting at the Peach Street Apartments. When he arrived at the complex parking lot, he observed a large group of people standing around a black male who was lying behind a car and who appeared to be lifeless.
Detective Sherita Holden, a violent crimes investigator with the SPD, testified that the 911 call reporting shots fired at the Peach Street Apartments was received at 9:47 p.m. Viewing the crime scene from the parking lot at the back of the apartment complex facing the buildings, Building L is to the left, Building K is straight ahead and there is a breezeway between them. Det: Holden contacted the apartment manager to secure the video from surveillance cameras mounted on the top of | ¡.Building K. The video, which captured the shooting, was played, for the jury at trial.
The video shows several people standing near the cars in the parking lot. A few minutes later, Mr. Britton walked up from the side of Building L, looked toward the breezeway and ran behind an Oldsmobile that the people were standing around. The Oldsmobile is seen at the bottom of the picture and is only partially in the frame, with the passenger’s side hidden from view. Mr. Britton is seen crouching down behind that ear, and the people walk away. Defendant walked into the scene from the breezeway and circled the car in pursuit of Mr. Britton. Eventually, Defendant jumped onto the hood of the car while Mr. Britton was at the rear of the car. Defendant then walked across the roof of the car and shot into the trunk as Mr. Britton went under the car. Defendant jumped off the trunk onto the ground, crouched down and shot several times directly under the trunk of the car where Mr. Britton was hiding.
The video further shows that Defendant walked toward the breezeway, and Mr. Britton crawled out from under the car. Defendant ran back and shot Mr. Britton at point-blank range, whereupon Mr. Brit-ton stopped moving. As Defendant fled toward the breezeway, a person identified *419 as Jeremy Bradford, a.k.a., “Swole,” is seen on the far end of the parking lot shooting toward the cars. He ran toward Mr. Britton and then toward the breezeway.
Det. Holden identified the people seen in the video standing by the cars before the shooting as Marshasity Crawford, a.k.a. “Big Shea,” Brian | ¡¡Hill and Steven Davis. While at the scene, Det. Holden heard people in the crowd saying, “Andrew didn’t have to do that,” and “Andrew shot Brit-ton.” Det. Holden identified “Andrew” as Defendant Andrew Smith. She also testified that, during her investigation, she learned that later on the same night of the shooting, Defendant’s mother purchased a bus ticket for him to Memphis, Tennessee. Defendant was subsequently arrested there and returned to Shreveport.
Marshasity Crawford testified that she has known both Defendant and Mr. Brit-ton for a very long time. She stated that, on the afternoon of the shooting, Mr. Brit-ton was at her home and he told her that Defendant had broken into Swole’s house and stolen his television. She further stated that Mr. Britton told her that, when Swole got home from work, they were going to confront Defendant about the theft. She identified Defendant as the person who shot Mr. Britton and stated that Defendant had come through the breezeway with a “MAC” gun in his hand and told her to get out of the way. Ms. Crawford told Defendant not to shoot Mr. Britton and Defendant responded, “F..k that, I gotta kill this bitch ass niggah,” and then got on top of the car and began shooting him.
Swole testified that, on the morning of the shooting, while at work in Texas, he received a telephone call from his friend, Mr. Britton, who told him that Defendant had broken into his apartment at the Northside Villa Apartments on North Market in Shreveport, had stolen his flat screen television and was attempting to sell it at the Peach Street Apartments. |4When he returned to Shreveport after work, he asked Mr. Britton to pick him up so they could confront Defendant about the burglary.
Swole testified that he took a semi-automatic rifle with him to the Peach Street Apartments, but placed it in the woods beside the apartments. Neither he nor Mr. Britton was armed when they confronted Defendant about the television. The three men engaged in a short fist fight, and Defendant was hit in the mouth and was bleeding. The fight dispersed with Swole and Mr. Britton believing the incident was over. They heard, however, that Defendant left to get a gun. They then separated, with Swole going to retrieve the rifle he had left in the woods on the side of the building and Mr. Britton going to the parking lot behind the apartment complex.
Swole further testified that he heard gunshots and returned to the parking lot, where he saw Defendant shooting Mr. Britton, who was on the ground, not on top of the car. He stated that he fired some shots at Defendant and thought he had hit him, so he left the scene, threw his gun into the Red River and returned to his apartment.
Brian Hill, the owner of the Oldsmobile, who was also present at the shooting, testified that he saw Mr. Britton “hit the corner,” and then come stand by him. When questioned if he had seen Mr. Britton go behind his vehicle, Mr. Hill was vague, stating, “I wasn’t just really, know what I’m saying, paying no attention, know what I’m saying.” However, he testified that he did see Defendant “hit the corner” and then identified Defendant in the courtroom. Mr. Hill stated he was not paying attention to the happenings around him *420 and ran from the scene when he was startled by | fishots being fired. Therefore, he could not testify further except to say that his car did have bullet holes in it and that he allowed the police to examine it for evidence of the crime.
Dr. James Traylor performed the autopsy and testified that Mr. Britton sustained a total of 16 gunshot wounds, eight penetrating and eight perforating.[1] Four of the gunshot wounds were fatal. He also had graze wounds to his right forearm, the outside of his upper left thigh and the inside of his upper left calf.
Corporal Eric Farquhar, a crime scene investigator for the SPD, testified at trial and presented a diagram and photographs of the crime scene, photographs of the Oldsmobile and the evidence he had collected, including 10 bullet projectilés, 25 spent shell casings and 1 live cartridge. He found 5 bullets inside the trunk area of the Oldsmobile. There were shoe prints on top of the car and blood located on the rear passenger side and rear bumper of the car.
On June 12, 2014, the jury found Defendant guilty as charged of second degree murder by a vote of 10-2. On June 16, 2014, Defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal, arguing that, at most, the evidence supported only the lesser offense of | manslaughter, claiming he had acted in the sudden heat of passion and had not had time for his blood to cool after the violent altercation of the fist fight. The sentencing hearing was held that same date, and the trial court denied both of the post-trial motions. Defendant waived sentencing delays, and the trial court sentenced him to the mandatory sentence of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence.
Defendant filed a motion to reconsider sentence, arguing that the life sentence was excessive. He claimed the trial court should have considered the fact that he was only 19 years old at the time of the offense, and he requested the court to consider a downward deviation from the mandatory life sentence. The trial court denied the motion, and this appeal followed.

DISCUSSION

Sufficiency of the Evidence

Defendant argues that the evidence presented at trial was insufficient to convict him of second degree murder. He contends that he had been beaten by Mr. Britton and Swole and that Swole ran to retrieve an assault rifle. He claims that, in the sudden passion or heat of blood caused by these conditions, he did what an average person in his position would do, which was he lost his self-control and cool reflection and lashed out violently against his attackers. For these reasons, he argues, the jury should have found him *421 guilty of the lesser charge of manslaughter rather than second degree murder.
|7The state argues that the evidence was sufficient to prove Defendant shot an unarmed man multiple times with the intent to kill and that, even if the fist fight had occurred sometime before, a sufficient amount of time elapsed for Defendant to cool down before the shooting. The state also argues that Defendant had the “thug” mentality of revenge and killing anyone who disrespected him, noting that he had said he had to “kill that bitch ass niggah.” The state asserts that, when Defendant retreated from the fist fight, he negated any opportunity to argue manslaughter, noting that he took the time to retrieve a gun and pursue Mr. Britton. He then fired multiple shots into a defenseless man and, after walking away, returned and fired into him again at point-blank range to make sure he died.
Second degree murder is the killing of a human being when the offender has the specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1).
Specific intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Glover, 47,311 (La.App.2d Cir.10/10/12), 106 So.3d 129, writ denied, 12-2667 (La.5/24/13), 116 So.3d 659. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Reed, 45,237 (La.App.2d Cir.5/26/10), 37 So.3d 1116. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Jones, 49,396 (La.App.2d Cir.11/19/14), 152 So.3d 235.
IsSpecific intent to kill or inflict great bodily harm may be inferred from the extent and severity of the victim’s injuries. State v. Thornton, 47,598 (La.App.2d Cir.3/13/13), 111 So.3d 1130. Further, the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Dooley, 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731, writ denied, 04-2645 (La.2/18/05), 896 So.2d 30.
La. R.S. 14:31(A)(1) defines manslaughter as:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed.
“Sudden passion” and “heat of blood” are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which' exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986); State v. Williams, 44,977 (La.App.2d Cir.1/27/10), 32 So.3d 902, writ denied, 10-0368 (La.9/24/10), 45 So.3d 1071.
The defendant bears .the burden to prove, by a preponderance of the evidence, that he acted in sudden passion or heat of blood in order for manslaughter to be appropriate. State v. Logan, 45,136 (La.App.2d Cir.4/14/10), 34 So.3d 528, writ *422 denied, 10-1099 (La.11/5/10), 50 So.3d 812; State v. Lang, 42,125 (La.App.2d Cir.5/30/07), 960 So.2d 318, writ denied, 07-1469 (La.1/11/08), 972 So.2d 1161; State v. Hendricks, 38,945 (La.App.2d Cir.9/22/04), 882 So.2d 1212, writ denied, 04-2833 (La.3/18/05), 896 So.2d 1000. Provocation and the time for cooling are questions for the trier of fact to determine according to the standard of the average or ordinary person. State v. Horn, 45,706 (La.App.2d Cir.11/3/10), 55 So.3d 100, writ denied, 10-2721 (La.5/6/11), 62 So.3d 124. The appellate court must determine whether a rational trier of fact, upon reviewing the evidence in the light most favorable to the prosecution, could have found that these mitigating factors had not been established by a preponderance of the evidence. State v. Robinson, 32,794 (La.App.2d Cir.3/1/00), 754 So.2d 311, writ denied, 00-0989 (La.3/23/01), 787 So.2d 1008.
Physical threats or actions on the part of the victim have been found to be sufficient provocation. State v. Wright, 42,956 (La.App.2d Cir.3/5/08), 978 So.2d 1062, writ denied, 08-819 (La.10/31/08), 994 So.2d 532. Even so, mere words or gestures, no matter how insulting, will not reduce a homicide from murder to manslaughter. Id.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 07-0725 (La.12/11/09), 23 So.3d 913.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299.
The evidence presented at trial was sufficient to support Defendant’s conviction for second degree murder. His specific intent to kill or inflict great bodily harm was demonstrated by his act of deliberately pointing a gun at Mr. Britton and firing 16 shots into him. The surveillance video, eyewitness testimony and physical evidence all support the jury’s conclusion that *423 Defendant had the specific intent to kill or inflict great bodily harm on Mr. Britton.
Further, Defendant failed to meet his burden of proving that he acted in sudden passion or heat of blood immediately caused by provocation sufficient to deprive the average person of self-control and cool reflection. The testimony of the witnesses established that the three men were involved in a fist fight prior to the shooting. The evidence established that approximately 10-15 minutes elapsed between the time of the fight and the shooting. During that time, Defendant went to one of the apartment buildings, retrieved a gun, talked to people outside the building and located Mr. Britton. There was no evidence that Mr. Britton was carrying a gun or actively threatening him when Defendant began shooting; rather, Mr. Britton was attempting to hide from him behind the car. Even if the fight was sufficient to provoke an average person, the jury could have reasonably concluded that Defendant’s blood had ample time to cool before he shot Mr. Britton.
| ^Considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of second degree murder proven beyond a reasonable doubt and that the mitigatory factors for reduction of this crime to manslaughter were not established by a preponderance of the evidence. Therefore, this assignment of error is without merit.

Excessiveness of the sentence

Defendant argues that his life sentence, although statutorily mandated, is excessive. He contends that he was only 19 years old when the offense was committed and his only criminal history was for traffic offenses. He also contends that the incident occurred only after Mr. Britton and Swole had pursued and beaten him and that Swole had brought an assault rifle to the apartment complex. He further argues that any average person in his position would have felt that the only course of conduct was to lash out against his attackers. Defendant asserts that he and his situation are exceptional, such that a downward deviation from the mandatory sentence is required.
The state contends that the circumstances do not warrant a downward departure from the sentence of life imprisonment and that any fist fight occurring earlier between the men did not justify Defendant shooting an unarmed man 16 times.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. Second, the |lscourt must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980).
Where there is a mandatory sentence, there is no need for the trial court to justify, under art. 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 06-1083 (La.11/9/06), 941 So.2d 35.
The mandatory sentence for second degree murder is punishment by life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B). The argument that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment *424 in the Louisiana Constitution has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Roberson, 40,809 (La.App.2d Cir.4/19/06), 929 So.2d 789.
To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, namely, that, because of unusual circumstances, the defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances of the case. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Parker, 47,952 (La.App.2d Cir.4/10/13), 113 So.3d 471, writ denied, 13-1051 (La.11/15/13), 125 So.3d 1101.
114The mandatory sentence of life imprisonment for a conviction of second degree murder is presumed to be constitutional, and Defendant failed to demonstrate that he is an “exceptional” defendant for whom a downward departure from the statutory minimum sentence is required. Defendant’s youth and lack of a criminal record are inadequate to show that the sentence is inappropriate for him. When compared to the severity of the offense, Defendant’s sentence is neither grossly disproportionate nor shocking to the sense of justice. We find, therefore, that Defendant’s life sentence is not constitutionally excessive. This assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Andrew Levell Smith are affirmed.
AFFIRMED.

. Mr. Britton sustained the following wounds: (1) entry and exit wound to left forearm; (2) entry wound to inside of upper right calf with corresponding exit wound to outside of upper right calf; (3) entry wound to right buttock with corresponding exit wound to front of right hip; (4) entry wound to back of upper right thigh; (5) entry and exit wound to front of left knee; (6) entry and exit wound to front of lower left thigh; (7) entry wound to upper left back; (8) entry wound to outside of upper left calf; (9) entry wound to inside of right knee; (10) entry wound to side of right abdomen with corresponding exit wound to side of left chest; (11) entry wound to outside of upper left thigh; (12) entry wound to front of left hip; (13) entry wound to lower left back with corresponding exit wound to left abdomen; (14) entry wound to front of upper right thigh with corresponding exit wound to left buttock; (15) entry wound to left buttock; and (16) entry wound to right buttock.